SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**PAUL T. MALONEY, OSB #013366**
Assistant United States Attorney
Paul.Maloney@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00245-IM-1** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JOSE IVAN IRIBE CAMORLINGA,** | |
| **Defendant.** | |

Defendant is before the Court for sentencing for his role as an interstate narcotics trafficker. Pursuant to a plea agreement, he pled guilty to Count One of the Indictment, charging that on or about May 20, 2025, the defendant did knowingly and intentionally possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(vi). The government has agreed to jointly recommend a sentence of 30 months' imprisonment, followed by five years' supervised release. The government recommends this sentence because it is consistent with the advisory sentencing guidelines, proportional to

**Government's Sentencing Memorandum**                                                                 **Page 1**

defendant's conduct, accounts for defendant's history and circumstances, and avoids unwarranted sentencing disparities. The recommended sentence therefore achieves the goals of sentencing.

## I.    SENTENCING CALCULATIONS

### A.    Plea Agreement and PSR Guideline Calculation

The government's guideline calculation is largely consistent with the Presentence Report (PSR).

| Provision | Description | Offense Level Calculation |
|---|---|---|
| USSG §2D1.1(c)(2) | 12 to 36 kilograms of a mixture substance containing fentanyl | BOL = 36 |
| USSG §2D1.1(a)(5)(A)(B)(iii) | | **BOL = 30** |
| USSG §2D1.1(b)(18) | Safety valve reduction | -2 |
| USSG §3B1.2(a) | Mitigating role | -4 |
| USSG §§4C1.1(a) and (b) | Zero-point offender | -2 |
| USSG §3E1.1 | Acceptance of responsibility | -3 |
| | **Total Offense Level** | **19** |

The parties agree that the defendant's relevant conduct pursuant to USSG §2D1.1(c)(2) is a base offense level of 36 based on a total of 12 to 36 kilograms of a mixture substance containing fentanyl. The four-level reduction for the defendant's mitigating role as a courier pursuant to USSG §3B1.2(a) applies, which adjusts the base offense level to 30. USSG §2D1.1(5)(A)(B)(iii).

The government has agreed to recommend several reductions as detailed in the plea agreement and PSR including a two-level downward adjustment for the "safety valve" pursuant to 18 U.S.C. §3553(f) and USSG §2D1.1(b)(18), a four-level courier reduction pursuant to USSG §3B1.2, a two-level reduction for being a zero-point offender as defined by USSG §§4C1.1(a) and (b), and a three-level reduction for acceptance of responsibility pursuant to USSG §3E1.1. PSR ¶¶ 25-33.

The resulting total offense level is 19. The PSR correctly calculates defendant's criminal history category I (zero points), which produces an advisory guideline range of 30-37 months' imprisonment. PSR ¶ 38.

### B.    The Recommended Sentence

Pursuant to the plea agreement, the parties jointly recommend a sentence of 30 months' imprisonment to be followed by five years' supervised release. This sentence is sufficient, but not more than necessary, to achieve the goals of sentencing.

## II.    ARGUMENT

### A.    Factual Summary

In May 2025, an Oregon State Police Trooper was in uniform, driving a marked patrol vehicle on Interstate 5 (I-5), when he observed Defendant commit a traffic violation in his presence. The trooper stopped the defendant along the highway and queried the registration for the vehicle Defendant was driving. The car returned as a reconstructed title from Guadalajara, Mexico. Based on his training and experience, the trooper knew that drug trafficking organizations will commonly use vehicles with reconstructed titles to traffic drugs.

When he contacted defendant, he was alone in the car, seated in the driver's seat, and holding a cellphone that appeared to be on an active call. The trooper noted the car's cabin had a strong odor from a scent diffusor. The trooper recognized this as a common tactic drug traffickers use to hide the odor of controlled substances they are transporting. During the stop, the trooper learned that the Oakland address the car was registered to was associated to a 2025 fentanyl sales investigation.

The trooper asked defendant if he was willing to answer additional questions while seated in the trooper's police vehicle. Defendant gave conflicting and inconsistent answers about his

**Government's Sentencing Memorandum**                                             **Page 3**

recent travel and destination. After advising defendant that the trooper believed defendant was involved in narcotics trafficking, the trooper requested consent to search defendant's car. The trooper believed defendant's appearance changed and he began to breathe heavily. Defendant said he did not speak English, so the trooper arranged for a Spanish-speaking interpreter to facilitate their continued conversation.

Defendant voluntarily consented to a search of his vehicle where the trooper found 27.77 gross kilograms (including packaging materials) of compressed fentanyl powder packaged in 25 packages weighing approximately one kilogram each. When asked about the drugs, Defendant said he thought they were cocaine. Field tests were later confirmed by laboratory results that the drugs were fentanyl.

**B.    30 Months' Imprisonment is Sufficient but Not More than Necessary**

The facts of this case indicate that defendant was not a leader/organizer within the larger drug conspiracy rather, he was a typical interstate bulk narcotics distributor. The defendant has received many sentencing concessions despite the enormous quantity of drugs he had agreed to transport from California to Oregon.

After all other reductions, including a three-level reduction for acceptance of accountability, two-level reduction for zero-point offender, and an agreed upon downward role reduction, defendant's offense level has been effectively reduced to a level 19. With a criminal history category of I, the parties' jointly recommended 30-month sentence is at the bottom end of that range. No further reductions are necessary to achieve a just sentence in this case.

The plea agreement in this case, and the recommended sentence accounts for the defendant's role in the scheme and balances that against the massive quantity of dangerous drugs he possessed with intent to distribute to others for profit. For these reasons, a sentence of 30

**Government's Sentencing Memorandum**                                                              **Page 4**

months' imprisonment and five years' supervised release is more than warranted for defendant's offense. This sentence is sufficient but not more than necessary to achieve the goals of sentencing.

## III.    CONCLUSION

Based on the forgoing, the government recommends that this Court impose a sentence of 30 months' imprisonment, order the defendant to pay a $100 fee assessment, followed by a five-year term of supervised release, subject to the standard conditions and special conditions set forth in the PSR.

Dated: July 23, 2026                                Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Paul T. Maloney*
PAUL T. MALONEY, OSB #013366
Assistant United States Attorney

**Government's Sentencing Memorandum**                                **Page 5**